IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

FILED
JUN 20 2007
ROBERT D. DENNIS
U.S. DIST COURT, WESTERN DIST OF OKLA
BY _____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | No. CR 07-154 T |
| -vs- ) | |
| ) | Violations:  18 U.S.C. § 372 |
| RUSSELL DEAN LANDERS; ) | 18 U.S.C. § 876(d) |
| CLAYTON HEATH ALBERS; ) | 18 U.S.C. § 287 |
| CARL ERVIN BATTS; ) | |
| BARRY DEAN BISCHOF; and ) | |
| WILLIAM MICHAEL ROBERSON, ) | |
| Defendants. ) | |

## INDICTMENT

The Federal Grand Jury charges:

### Introduction

At all times relevant to this Indictment:

1.  **RUSSELL DEAN LANDERS** was an inmate at the Federal Correctional Institution in El Reno, Oklahoma ("FCI-El Reno").

2.  **CLAYTON HEATH ALBERS** was an inmate at FCI-El Reno.

3.  **CARL ERVIN BATTS** was an inmate at FCI-El Reno.

4.  **BARRY DEAN BISCHOF** was an inmate at FCI-El Reno.

5.  **WILLIAM MICHAEL ROBERSON** was a resident of Baton Rouge, Louisiana.

6.  "Lee Jessup" was a name used by a federal agent operating in an undercover capacity.

## COUNT 1
### Conspiracy to Impede Federal Officials

7. The Federal Grand Jury incorporates paragraphs 1-6 by reference.

8. From about May 1, 2003, to about December 31, 2005, in the Western District of Oklahoma and elsewhere,

------------------------------- **RUSSELL DEAN LANDERS;**
**CLAYTON HEATH ALBERS;**
**CARL ERVIN BATTS;**
**BARRY DEAN BISCHOF; and**
**WILLIAM MICHAEL ROBERSON** -------------------------------

knowingly and willfully and with interdependence conspired and agreed with each other and with other persons known and unknown to the Federal Grand Jury to prevent by intimidation and threat officials employed by the United States Bureau of Prisons at FCI-El Reno, including the warden of that facility, from discharging their duties.

### The Object of the Conspiracy

9. The object of the conspiracy was to make exorbitant financial demands on prison officials, to file liens on the real and personal property of those officials, and to seize the property of those officials for the purpose of causing those officials to release **LANDERS, ALBERS, BATTS,** and **BISCHOF** from federal custody.

### Manner and Means

10. The object of the conspiracy was accomplished as follows:

A. **LANDERS, ALBERS, BATTS,** and **BISCHOF** identified prison officials who they believed had the power to release them from custody or give them some other

benefit.

B. **LANDERS, ALBERS, BATTS,** and **BISCHOF** prepared documents that purported to assert property rights in their own names, written warnings to the prison officials that further use of their names would cause the officials to owe them large sums of money, and invoices to prison officials for the purportedly unauthorized use of their names.

C. **LANDERS, ALBERS, BATTS,** and **BISCHOF** recruited individuals who were not incarcerated to assist them. These individuals included **ROBERSON**, J.M., and L.H.

D. **LANDERS, ALBERS, BATTS,** and **BISCHOF** instructed **ROBERSON**, J.M., and L.H. to take actions in support of mailing certain documents to the warden and other prison officials and to prepare other documents to be used in the conspiracy, including Uniform Commercial Code ("UCC") financing statements to be filed against the property of the warden and other prison officials in Oklahoma County, Canadian County, and elsewhere.

E. **LANDERS, ALBERS, BATTS,** and **BISCHOF** sought an individual with experience in repossessing property who would be willing and able to take possession of the real and personal property of the warden and other prison officials based on invoices and liens relating to the purportedly unauthorized use of their names. Conspirators selected an individual known to **LANDERS, ALBERS, BATTS, BISCHOF,** and **ROBERSON** as "Lee Jessup" to perform these repossession tasks.

F.  After **LANDERS, ALBERS, BATTS,** and **BISCHOF** were informed that "Lee Jessup" had changed the locks on the warden's home, taken possession of the warden's vehicles, and frozen the warden's bank accounts, they demanded a meeting with the warden and informed him that they would not negotiate the return of his property until they were transported off of federal property, taken out of their prison clothing, and no longer in custody.

## Overt Acts

11.  In order to effect the object of the conspiracy, the following overt acts, among others, were committed, on about the dates alleged:

A.  On August 19, 2003, **ROBERSON** mailed to the warden of FCI-El Reno at his official government address three documents entitled "Notice by Written Communication / Security Agreement." One of these documents was signed by **LANDERS**, one by **ALBERS**, and one by **BATTS**. These documents stated that **LANDERS, ALBERS,** and **BATTS** held "common-law copyright" and "trade-name / trademark" rights in their own names and that if the warden used their names without their authorization, he would be required to pay $500,000 per occurrence, plus triple damages.

B.  On September 8, 2003, **LANDERS, ALBERS,** and **BATTS** each caused to be mailed to the warden of FCI-El Reno at his official government address invoices for unauthorized uses of their names. **LANDERS** demanded that the warden pay $15 million. **ALBERS** and **BATTS** each demanded that the warden pay $13.5 million.

C. On January 9, 2004, J.M. met with "Lee Jessup" to coordinate filing liens on the property of prison officials and seizing their property based on the liens.

D. In early February of 2004, conspirators caused L.H. to receive a credit report that listed the warden's bank accounts, credit card accounts, vehicles, social security number, and other personal information. The credit report had been printed at a car dealership in Texas in early November of 2003.

E. On February 18, 2004, L.H. met "Lee Jessup" at a bank in Irving, Texas. L.H. had in her possession lien forms and other documents involved in claims by **LANDERS, ALBERS, BATTS,** and **BISCHOF** that eight prison officials, including the Director of the Bureau of Prisons, would owe $500,000 per occurrence, plus triple damages, for the use of their names. At this meeting, L.H. provided the credit report concerning the property of the warden of FCI-El Reno to "Lee Jessup" to assist him in effecting seizures.

F. On February 28, 2004, **LANDERS** instructed "Lee Jessup" by telephone on how to accomplish lien filings against prison officials on behalf of **LANDERS, ALBERS, BATTS,** and **BISCHOF**.

G. On March 1, 2004, L.H. met with "Lee Jessup," who signed a contract for recovery services in which L.H. agreed on behalf of **LANDERS, ALBERS, BATTS,** and **BISCHOF** that "Lee Jessup" would receive 12% of the gross proceeds of the sale of property seized.

H. On March 2, 2004, **ROBERSON** mailed to the warden of FCI-El Reno at

his official government address a document entitled "Notice by Written Communication / Security Agreement." This document, which was signed by **BISCHOF**, stated that **BISCHOF** held "common-law copyright" and "trade-name / trademark" rights in his own name and that if the warden used his name without **BISCHOF**'s authorization, he would be required to pay $500,000 per occurrence, plus triple damages.

I.   On March 3, 2004, "Lee Jessup" informed **LANDERS** by telephone that he had changed the locks on the warden's home, taken possession of the warden's property, and frozen the warden's bank accounts, all based on the liens that conspirators believed that they had caused to be filed.

J.   On March 3, 2004, **LANDERS, ALBERS, BATTS**, and **BISCHOF** demanded and received a meeting with the warden. Speaking on behalf of **LANDERS, BATTS**, and **BISCHOF**, **ALBERS** informed the warden that the group would not negotiate the terms for the release of his property until they were transported off of federal property, taken out of their prison clothing, and no longer in custody.

**All in violation of Title 18, United States Code, Section 372.**

## COUNT 2
**Mailing Threatening Communications with Intent to Extort**

12.   The Federal Grand Jury incorporates paragraphs 1 and 5 by reference.

13.   On about August 19, 2003, in the Western District of Oklahoma and elsewhere,

--------------------------------- **RUSSELL DEAN LANDERS** and
                                  **WILLIAM MICHAEL ROBERSON**, ---------------------------

with the intent to extort a thing of value, knowingly caused to be delivered by United States mail a written communication addressed to the warden of FCI-El Reno that contained a threat to injure the property and financial reputation of the warden on account of the performance of his official duties. In particular, with the intent to use financial pressure and collection procedures to obtain **LANDERS**'s release from prison, **LANDERS** and **ROBERSON** caused to be mailed to the warden a "Notice by Written Communication / Security Agreement" that purported to require the warden to pay **LANDERS** $500,000, plus triple damages, for each occasion on which the warden used **LANDERS**'s name.

**All in violation of Title 18, United States Code, Section 876(d).**

## COUNT 3
**Mailing Threatening Communications with Intent to Extort**

14. The Federal Grand Jury incorporates paragraphs 2 and 5 by reference.

15. On about August 19, 2003, in the Western District of Oklahoma and elsewhere,

------------------------------ **CLAYTON HEATH ALBERS and WILLIAM MICHAEL ROBERSON,** ----------------------------

with the intent to extort a thing of value, knowingly caused to be delivered by United States mail a written communication addressed to the warden of FCI-El Reno that contained a threat to injure the property and financial reputation of the warden on account of the performance of his official duties. In particular, with the intent to use financial pressure and collection procedures to obtain **ALBERS**'s release from prison, **ALBERS**

7

and **ROBERSON** caused to be mailed to the warden a "Notice by Written Communication / Security Agreement" that purported to require the warden to pay **ALBERS** $500,000, plus triple damages, for each occasion on which the warden used **ALBERS**'s name.

**All in violation of Title 18, United States Code, Section 876(d).**

<u>COUNT 4</u>
**Mailing Threatening Communications with Intent to Extort**

16. The Federal Grand Jury incorporates paragraphs 3 and 5 by reference.

17. On about August 19, 2003, in the Western District of Oklahoma and elsewhere,

------------------------------------- **CARL ERVIN BATTS and**
**WILLIAM MICHAEL ROBERSON,** -----------------------------

with the intent to extort a thing of value, knowingly caused to be delivered by United States mail a written communication addressed to the warden of FCI-El Reno that contained a threat to injure the property and financial reputation of the warden on account of the performance of his official duties. In particular, with the intent to use financial pressure and collection procedures to obtain **BATTS**'s release from prison, **BATTS** and **ROBERSON** caused to be mailed to the warden a "Notice by Written Communication / Security Agreement" that purported to require the warden to pay **BATTS** $500,000, plus triple damages, for each occasion on which the warden used **BATTS**'s name.

**All in violation of Title 18, United States Code, Section 876(d).**

## COUNT 5
**False Claim Against the Government**

18. The Federal Grand Jury incorporates paragraph 1 by reference.

19. On about September 8, 2003, in the Western District of Oklahoma and elsewhere,

------------------------------- **RUSSELL DEAN LANDERS** -------------------------------

knowingly made and caused to be presented to an agency of the United States, specifically the Federal Bureau of Prisons, a component of the United States Department of Justice, a false claim for $15 million based on the warden of FCI-El Reno having used **LANDERS**'s name on ten occasions during the performance of his official duties, when he knew that that claim was false, fictitious, and fraudulent.

**All in violation of Title 18, United States Code, Section 287.**

## COUNT 6
**False Claim Against the Government**

20. The Federal Grand Jury incorporates paragraph 2 by reference.

21. On about September 8, 2003, in the Western District of Oklahoma and elsewhere,

------------------------------- **CLAYTON HEATH ALBERS** -------------------------------

knowingly made and caused to be presented to an agency of the United States, specifically the Federal Bureau of Prisons, a component of the United States Department of Justice, a false claim for $13.5 million based on the warden of FCI-El Reno having used **ALBERS**'s name on nine occasions during the performance of his official duties,

when he knew that that claim was false, fictitious, and fraudulent.

**All in violation of Title 18, United States Code, Section 287.**

## COUNT 7
**False Claim Against the Government**

22. The Federal Grand Jury incorporates paragraph 3 by reference.

23. On about September 8, 2003, in the Western District of Oklahoma and elsewhere,

---------------------------------- **CARL ERVIN BATTS** ----------------------------------

knowingly made and caused to be presented to an agency of the United States, specifically the Federal Bureau of Prisons, a component of the United States Department of Justice, a false claim for $13.5 million based on the warden of FCI-El Reno having used **BATTS**'s name on ten occasions during the performance of his official duties, when he knew that that claim was false, fictitious, and fraudulent.

**All in violation of Title 18, United States Code, Section 287.**

## COUNT 8
**Mailing Threatening Communications with Intent to Extort**

24. The Federal Grand Jury incorporates paragraphs 4 and 5 by reference.

25. On about March 2, 2004, in the Western District of Oklahoma and elsewhere,

---------------------------------- **BARRY DEAN BISCHOF and**
                                   **WILLIAM MICHAEL ROBERSON,** ----------------------------------

with the intent to extort a thing of value, knowingly caused to be delivered by United

States mail a written communication addressed to the warden of FCI-El Reno that contained a threat to injure the property and financial reputation of the warden on account of the performance of his official duties. In particular, with the intent to use financial pressure and collection procedures to obtain **BISCHOF**'s release from prison, **BISCHOF** and **ROBERSON** caused to be mailed to the warden a "Notice by Written Communication / Security Agreement" that purported to require the warden to pay **BISCHOF** $500,000, plus triple damages, for each occasion on which the warden used **BISCHOF**'s name.

**All in violation of Title 18, United States Code, Section 876(d).**

A TRUE BILL:

FOREPERSON OF THE GRAND JURY

JOHN C. RICHTER
United States Attorney

SCOTT E. WILLIAMS
Assistant U.S. Attorney